# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-_____

STATE REGULATORY REGISTRY, LLC,
a Washington, D.C. Limited Liability Company,

  Plaintiff,

v.

BILLY GLENN BARTHOLOMEW, an individual;
MTI SERVICES CORPORATION, a Colorado
Corporation; and, CAREY GREEN, an individual,

  Defendants.

---

## COMPLAINT

---

  Plaintiff State Regulatory Registry, LLC ("SRR"), for its complaint against Defendants Billy Glenn Bartholomew ("Bartholomew"), MTI Services Corporation ("MTI"), and Carey Green ("Green") (collectively, "Defendants"), states as follows:

## INTRODUCTION

  1. This lawsuit seeks to put an end to Defendants' deceptive, and likely lucrative, conspiracy to steal, reproduce, and sell highly confidential content from the high-stakes licensing examination for mortgage loan originators that is owned and administered by SRR. Defendants have betrayed SRR's trust and violated contractual obligations to SRR by secretly photographing, reproducing, and selling licensing examination questions to customers so as to give those customers an unfair advantage on the test. This deceit is not only financially damaging to SRR

1

and the security and validity of its test, but it also undermines the public consumer protections the test was designed to achieve.

2.    Plaintiff SRR develops and administers the licensing examination that assesses competence in mortgage lending in the United States and its territories, known as the SAFE Mortgage Loan Originator National Test with Uniform State Content ("SAFE MLO Test"). SAFE MLO Test scores are used by licensing agencies in the United States and its territories when evaluating applicants for licensure as a mortgage loan originator. These jurisdictions require a passing score on the SAFE MLO Test to obtain a license.

3.    SRR invests substantial time and effort in developing the four-option multiple-choice questions used on the SAFE MLO Test. SRR relies upon and places a significant amount of trust in Subject Matter Experts ("SMEs")—highly respected members of the mortgage loan origination and regulatory community who volunteer their time and expertise—to develop and evaluate each question before it is used on the exam.

4.    SRR works continually to ensure the ongoing psychometric validity and security of the SAFE MLO Test, as well as the reliability of candidate scores, which is crucial to fulfilling one of SRR's primary missions—to protect consumers by ensuring the competence of test takers who pass the SAFE MLO Test.

5.    SAFE MLO Test questions are highly confidential and are not made available to the public. SAFE MLO Test questions are also protected by U.S. Copyright law and are registered with the U.S. Copyright Office. Information regarding the specific content and material covered on the SAFE MLO Test also constitutes SRR's highly valuable trade secrets.

DOCS-#5940188-v1

6. To ensure this confidentiality, SRR requires all SMEs to sign a confidentiality agreement, which prohibits the disclosure of exam content as well as any other activities that may give rise to a conflict of interests. Thus, in addition to their ethical and moral obligations, SMEs are under a contractual obligation to keep all materials with which they have been entrusted "strictly confidential." Likewise, individuals who sit for the SAFE MLO Test agree to keep its contents confidential. Additionally, educational course providers like Defendant MTI, which must be approved by SRR, agree not to take actions that jeopardize the integrity of the test.

7. This lawsuit arises from a systematic abuse of SRR's trust. Defendant Bartholomew, acting in coordination with Defendant MTI, used his position as an SME to improperly harvest, reproduce, and disseminate SAFE MLO Test content shared with him during the test development process. Based upon evidence gathered to date, SRR believes that Defendant Bartholomew shared this highly confidential test content with his employer, Defendant MTI, a mortgage education company that offers pre-licensure education courses and SAFE MLO Test preparation—which then incorporated this highly confidential and copyrighted information into its commercial test preparation materials.

8. More specifically, and as set forth in more detail herein, SRR recently discovered that Defendant Bartholomew has repeatedly secretly photographed and recorded SAFE MLO Test content during test question development meetings. SRR has also recently discovered that Defendant MTI's commercial SAFE MLO Test preparation materials contain practice questions that are substantially similar to real test questions to which Defendant Bartholomew had access. Upon information and belief, Defendant MTI has propounded this harm by providing stolen SAFE MLO Test content to a test preparation company operated by Defendant Green, who describes his

3

company as an "affiliate" of Defendant MTI. Defendant Green, in turn, has published this stolen content online via his web site PassTheSAFEExam.com.

9.    Upon information and belief, Defendants MTI and Green have also improperly solicited from past test takers details about the questions and answer choices those test takers viewed when sitting for the SAFE MLO Test, inducing those test takers to violate the confidentiality obligations those test takers agreed to in their test-taker agreements with SRR.

10.    As a result of Defendants' improper conduct, SRR's questions have been irreparably compromised and must be retired from use. More importantly, Defendants' conduct provides their customers advance access to SAFE MLO Test questions, which gives those customers an unfair advantage on the exam, undermines the security of the exam, and jeopardizes the consumer protections the SAFE MLO is designed to ensure, as well as public confidence in the mortgage lending profession.

11.    To remedy these harms, SRR seeks injunctive and monetary relief—including statutory, punitive and exemplary damages, as well as attorneys' fees—as a result of the improper conduct of Defendants. Defendants' actions constitute willful copyright infringement and contributory copyright infringement, willful and malicious misappropriation of SRR's trade secrets under common law and the Defend Trade Secrets Act, breach of contract, and tortious interference with SRR's contractual relationships with Defendant Bartholomew and with test takers.

## JURISDICTION, PARTIES AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1337 and 1338(a) because it is a civil action involving federal questions related to

claims for copyright infringement under the Copyright Act of 1976, Title 17 of the United States Code and claims for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*; the citizenship of the Plaintiff is diverse from the citizenship of Defendants and the matter in controversy exceeds $75,000; and there is supplemental jurisdiction over the common law claims.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and 1400(a) because this is a civil action for copyright infringement; a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district; Defendants reside in the State in which this district is located; Defendants are subject to personal jurisdiction in this district; and Defendants have committed torts in whole or in part in this district.

14. The Court has personal jurisdiction over Defendants because Defendants reside in this district and/or have contacts with this jurisdiction sufficient to subject them to personal jurisdiction in this district, including but not limited to the acts giving rise to this litigation.

15. Plaintiff SRR, an affiliate of the Conference of State Bank Supervisors, Inc. and the operator of the Nationwide Mortgage Licensing System and Registry ("NMLS"), is a non-profit 501(c)(3) organized and existing under the laws of the District of Columbia with its principal place of business at 1129 20th St. N.W., Washington, D.C. 20036.

16. Upon information and belief, Defendant MTI is a Colorado corporation with its principal place of business at 7600 East Eastman Avenue, Suite 110, Denver, Colorado 80231. MTI can be served through its registered agent for service of process, Donald B. Exley, at the same address.

DOCS-#5940188-v1

17.    Defendant Bartholomew is a resident citizen of this State and this district and not of any other state.  He has been an educational course instructor at MTI since at least 2011 and in January 2017 was hired as MTI's Education Director, with responsibility for class instruction and educational content at MTI.  Upon information and belief, Defendant Bartholomew may be served with process at his place of residence, 8446 Nelson Ct., Arvada, Colorado 80005.

18.    Upon information and belief, Defendant Carey Green is a resident citizen of this State and this District and not of any other state.  Upon information and belief, Defendant Green may be served with process at his place of residence, 30875 County Road 356-6, Buena Vista, CO 81211.

## FACTUAL ALLEGATIONS

19.    SRR is a non-profit limited liability company formed in September of 2006 with a goal of, among other things, protecting consumers and improving supervision and enforcement of licensed entities by developing and administering a valid and reliable licensing exam for Mortgage Loan Originators ("MLOs").

20.    Since 2008, a primary function of SRR has been the development and administration of the SAFE MLO Test.  The SAFE MLO Test was created in response to, and to satisfy the requirements of, the Secure and Fair Enforcement for Mortgage Licensing Act of 2008 (the "SAFE Act"), which mandated that states adopt legislation requiring the licensure of MLOs according to national standards.  The SAFE Act requires that state-licensed MLOs pass the SAFE MLO Test, among other things.  The purpose of the SAFE Act, including this testing requirement, is to enhance consumer protection and reduce fraud through the setting of minimum standards for the licensing and registration of state-licensed MLOs.

DOCS-#5940188-v1

21.     Since 2008, the content of the SAFE MLO Test has been developed with the help of leading mortgage professionals throughout the United States and its territories.  Throughout the development of the exam, SRR followed national guidelines for testing in order to ensure a fair, valid and reliable examination.  As a result, the SAFE MLO Test provides a unified set of nationally-verified standards for the secure and competent practice of mortgage loan originating. The SAFE MLO Test plays an important role in the protection of the public by ensuring that MLOs who conduct such important financial transactions fully understand the legal and ethical requirements governing their work and meet a minimum standard of entry-level competency.

22.     The SAFE MLO Test consists of a compilation of questions on various subjects concerning mortgage loan origination.  Questions that meet content and statistical specifications are developed and reviewed by SMEs through a confidential, collaborative process.

23.     SMEs are well-respected members of the mortgage lending community who voluntarily participate in this confidential process to, *inter alia*, sharpen and improve on skills that can enhance the SME's professional credentials, attain experience that could potentially provide professional advancement and growth, become known in the community as a contributor to the validity of the test, and increase his or her proficiency to review and analyze test items specific to the SME's field.

24.     SRR works continually to ensure the ongoing psychometric validity and security of the SAFE MLO Test, as well as the reliability of candidate scores, which is crucial to fulfilling SRR's primary mission of protecting consumers by ensuring the competence of test takers who pass the SAFE MLO Test.

DOCS-#5940188-v1

25.     SRR has the responsibility to ensure that each candidate's exam score accurately reflects the candidate's actual competence and mastery of the required financial, ethical and legal principles, and that each successful candidate passes the exam based on the candidate's own merit, without improper assistance or unfair advantage.

26.     In fulfillment of this obligation, SRR employs stringent security standards to ensure the security and integrity of the test.  Because SMEs have advance access to test content, a crucial component of this effort is ensuring that these experts maintain the confidentiality of that content. To that end, SRR requires each SME to adhere to a strict code of confidentiality regarding test content.  Specifically, as an express condition of their viewing the SAFE MLO Test questions and participating in the test development process, SMEs must agree to:

> keep strictly confidential the nature of the work to be performed [for SRR] and all test items, information data, drawings, reports or other materials received from SRR or FINRA, or assembled, created, or worked on by the SME in the performance of services [for SRR].  The SME shall not disclose the Confidential Information to any person who is not a party to this agreement, other than to FINRA acting on SRR's behalf.

27.     The written agreement between SRR and the SMEs further requires that SMEs agree that they will report and remedy any conflict of interest, *i.e.* any "actual, perceived, or potential benefit to the SME or his/her family that can bias or negatively impact the SME's sound judgment relative to the SME's obligations" to SRR, or withdraw from the SME program.

28.     SRR imposes similar ethical requirements on all approved educational course providers, like Defendant MTI.  Specifically, SRR approves course providers only on the condition that the providers agree to comply with certain standards of conduct, including not viewing or acquiring SAFE MLO Test questions or communicating with anyone who has special knowledge regarding test content or other non-public characteristics of the SAFE MLO Test.

8

29.     Approved course providers are also prohibited from having their employees, agents, or other representatives take the SAFE MLO Test for the purpose of learning about the test or any of its contents.  They are also prohibited from communicating with customers or prospective customers that have special knowledge regarding the content or other non-public characteristics of the SAFE MLO Test.

30.     SRR invests substantial time and effort in developing and maintaining the SAFE MLO Test questions.  The nature and scope of the topics covered on the test are derived from a content outline, which establishes the blueprint for test content.  SRR initially developed the content with the support of a third-party test development firm and a committee of 90 SMEs, including Defendant Bartholomew.  The construction of the content outline was also supported by a job analysis designed to review and confirm the areas of knowledge expected of mortgage loan originators, and to ensure that the test reflected current industry practices, relevant job functions, and relevant laws and regulations.  Consistent with testing industry standards, the job analysis is repeated periodically, most recently in 2015.

31.     The process of constructing each test question is expensive and time-consuming.  SRR employs a near-continuous maintenance cycle to maintain the SAFE MLO Test and its questions.  SRR relies significantly upon its Test Maintenance Committee, a volunteer group of SMEs that, since 2009, has included Defendant Bartholomew.

32.     Every existing test question is reviewed at least once per year.  At least three times per year, between twenty and thirty volunteer members of the Test Maintenance Committee participate in facilitated meetings led by test specialists, including measurement professionals and psychometricians.  Each of these three maintenance cycles typically takes between six and eight

9

weeks to complete and involves a series of weekly meetings with the SMEs on the committee, as well as additional development work by the test specialists.

33.     During these development cycles, the Test Maintenance Committee reviews existing questions to ensure they remain accurate and consistent with current laws and regulations and substantively up-to-date.

34.     The Test Maintenance Committee also develops new test questions.  Members are assigned to draft new questions and answer choices, and each new item is reviewed by the full committee for approval.  Approved test questions are used on upcoming tests on a non-scored basis, to allow SRR time to evaluate the items fairness and functionality.  After three to six months of pre-testing, new questions are reviewed by psychometric specialists to determine whether they should be included on future tests as a live, scored item.  Only about half of the questions drafted by the Test Maintenance Committee ultimately make it to live item status.

35.     Thus, each potential multiple-choice question (and corresponding answer choices) undergoes rigorous review and analysis before being included in a test as a scored item.  As a result, it generally takes approximately nine months and a substantial number of man hours for a single SAFE MLO Test question to be vetted, analyzed and accepted for use on the SAFE MLO Test.

36.     Once approved for use, SAFE MLO Test questions are added to SRR's database of active test questions, from which the 125 questions used for each exam form are drawn.  As is common and necessary in the standardized testing industry, SRR re-uses questions from administration to administration in order to better equate examination scores (a psychometric process designed to ensure that the overall exam difficulty is stable over time) and to control costs.

10

In addition, SRR often uses existing questions in the item bank to create revised questions. Thus, advance access to test questions can provide a test taker with a distinct, and unfair, advantage on the test.

### *SRR's Copyrights in the SAFE MLO Test Questions*

37.    Since 2014, SRR has registered its SAFE MLO Test questions with the United States Copyright Office. The SAFE MLO Test questions are the subject of two separate registrations with the Copyright Office, each submitted via the Copyright Office's special registration process for Secure Tests:

| **Registration No.** | **Date** | **Title** |
|---|---|---|
| TX 7-929-646 | October 9, 2014 | SAFE Mortgage Loan Originator Test – National Component with Uniform State Content |
| TX 8-160-308 | January 5, 2016 | SAFE Mortgage Loan Originator Test – National Component with Uniform State Content |

True and correct copies of the Certificates of Registration are attached *in globo* as Exhibit A.

38.    SRR's copyrights in the SAFE MLO Test questions are presently valid and subsisting, and have been valid and subsisting at all times herein affecting the matter complained of.

### *The Highly Confidential Nature of the SAFE MLO Test Questions and Content*

39.    The confidentiality and security of the SAFE MLO Test questions and exam content details are of great importance because the unauthorized disclosure of this information compromises the SAFE MLO Test's competence assessment process and the state licensure process that is mandated by federal law. Test security and confidentiality is an ongoing priority

11

for SRR, particularly given the risk to consumers that could result from unreliable or invalid examination results.

40.    SAFE MLO Test questions are not made available to the public.  Although SRR publishes a Content Outline listing the general topic areas covered by the exam, SRR strictly limits and controls access to specific test questions and detailed information regarding test content, both during question development and after a question becomes active.

41.    SRR takes significant steps to ensure the confidentiality of its SAFE MLO Test questions and the security of its exam administrations.  These include, but are not limited to, the following:

(a)    SAFE MLO Test items are stored in a proprietary, secure database, access to which is limited to only those SRR staff and representatives of its designated testing contractor with direct involvement in examination development, each of whom is bound by a confidentiality agreement;

(b)    the secure database can only be accessed through a unique username and ID and must be used via an approved Internet Protocol;

(c)    SMEs engaged to develop and review new test questions are required to sign non-disclosure agreements;

(d)    test questions are not kept on SRR premises but are stored off-site on a secure server;

(e)    proctors who oversee exam administrations, and the test centers at which the exam is administered, are carefully selected and screened;

(f)    on test day, candidates must present two forms of photo identification and take a digital photograph to ensure that only registered and eligible candidates gain entry to the test center and access the examination;

(g)    candidates are under constant video and audio surveillance from the time they enter the test center, during the examination, and during their exit from the test center;

(h)    candidates are not permitted to leave the building during the examination, are not permitted to bring outside items into the testing room (*e.g.*, books, calculators, cell phones or electronic devices, notes, paper, pen/pencil, watch, purse/wallet, etc.) and are screened by metal detection wands and physically searched for outside items;

(i)     proctors at each test center are required to make written reports to SRR of any incidents involving a possible breach of exam security or any other testing irregularity;

(j)     candidates are not allowed to photograph, copy by hand, or otherwise reproduce the questions displayed on the computer screen during the exam administration;

(k)     test questions are registered with the U.S. Copyright Office via the Secure Test procedure, which excuses the registrant from leaving behind a public copy of the exam questions, so as to preserve confidentiality; and

(l)     at the time of application for the examination, candidates are required to agree to maintain the confidentiality of the SAFE MLO Test questions that they will see on examination day and are cautioned that sharing information about the exam questions can result in a denial to release an examination score or possible legal action.  Candidates also receive exam security reminders when they receive notification of approval to test.  On exam day, candidates must agree to the confidentiality terms before they are permitted access to the examination.

### *Defendant Bartholomew's Participation in SAFE MLO Test Development and Improper Harvesting of Test Content*

42.     Defendant Bartholomew has acted as an SME for the SAFE MLO Test since 2009. He has participated in numerous National Test Maintenance Committee meetings, including in 2009, 2013, 2014, 2015, and 2017.

43.     Prior to viewing any of SRR's SAFE MLO Test material, Defendant Bartholomew signed written non-disclosure agreements which, among other things, obligated him to "keep strictly confidential the nature of the work" he performed for SRR and to refrain from disclosing any confidential information to non-parties.

44.     By entering into this non-disclosure agreement, Defendant Bartholomew further represented that his role as an SME did not present a conflict of interest because there was no "actual, perceived, or potential benefit to" him or his family that could "bias or negatively impact" his "sound judgment."

13

45.     Defendant Bartholomew abused his trusted role as an SME by photographing and stealing SRR test questions and content for the purpose of sharing that content with his employer, Defendant MTI.

46.     As mentioned above, SRR regularly conducts National Test Maintenance Committee meetings as part of the test development process.  During these meetings and throughout the test question development process, SRR relies on SMEs like Defendant Bartholomew to review and comment on proposed test questions.

47.     These National Test Maintenance Committee meetings take place virtually on an internet-based platform.  Given the confidential nature of the SAFE MLO Test questions, these meetings are not recorded; rather, the third-party facilitator of the meetings broadcasts each question live to meeting participants via the internet-based platform and monitors the ensuing discussion before scrolling to the next question.  Facilitators are able to receive all audio and video information that participants in the virtual meeting choose to broadcast.  Typically, however, participants broadcast only audio and do not enable the video functionality of their own web cameras.

48.     In early 2017, Defendant Bartholomew participated in several virtual National Test Maintenance Committee meetings.  During one of these meetings, meeting facilitators heard the sound of a cell phone camera taking pictures.

49.     When the sound was heard, the facilitators paused the meeting to remind all participants of their confidentiality obligations and the trust that SRR had placed in them.  Specifically, they stated that the discussed material is confidential and copyrighted and, therefore, should not be photographed and may not be recorded or shared outside of the meeting.

14

50.     Defendant Bartholomew was a participant in this committee meeting in early 2017. Upon information and belief, he is the individual who was heard taking photographs of the computer screen displaying SAFE MLO Test questions.

51.     On May 15, 2017, the National Test Maintenance Committee, including Defendant Bartholomew, conducted another virtual meeting during which the SMEs were asked to review and evaluate test questions from the SAFE MLO Test.

52.     After fourteen questions had been displayed and reviewed on the screen broadcast to meeting participants, the meeting facilitator noticed that Defendant Bartholomew's computer web camera was on, and that Defendant Bartholomew was (presumably inadvertently) broadcasting both audio and video images of himself to the facilitators.

53.     While observing the broadcast from Defendant Bartholomew's web camera, the facilitator saw that Defendant Bartholomew was holding his cell phone up to his computer monitor in a manner that suggested he was taking photographs of the screen.

54.     The facilitator immediately asked a colleague in the room to observe Defendant Bartholomew's behavior.  This colleague agreed with the facilitator's conclusion that Defendant Bartholomew was photographing the screen.  She also took pictures and video of Defendant Bartholomew's actions, thus capturing images of Defendant Bartholomew improperly taking pictures of his own computer screen.

55.     The facilitators then contacted representatives of SRR, who instructed the facilitators to immediately end the virtual meeting and web broadcast to prevent any more questions from being stolen.

DOCS-#5940188-v1

*Use of Defendant Bartholomew's Stolen Questions by Defendants MTI and Green*

56.    Upon information and belief, Defendant Bartholomew harvested SAFE MLO Test content in 2017 and in prior years for the purpose of sharing that content with Defendant MTI. Defendants Bartholomew and Green also would have had access to SAFE MLO Test content when they themselves sat for the test as part of their efforts to become licensed MLOs.

57.    Defendant MTI is a mortgage education course provider approved by SRR to provide pre-licensure and continuing education instruction to MLOs.  As an approved provider, MTI is obligated to comply with SRR's code of conduct and, therefore, may not communicate with individuals who have special knowledge regarding the content or "other non-public characteristics of the SAFE MLO Test."

58.    Defendant Bartholomew has been a course instructor at MTI for many years and in January 2017 was hired as MTI's Education Director, giving him oversight over MTI's educational programs.

59.    SMEs like Defendant Bartholomew who work on the development of the SAFE MLO Test are prohibited from working in pre-licensure education and must reaffirm in writing on an annual basis that they have no such involvement.  As recently as the spring of 2017, Defendant Bartholomew asserted in writing to SRR that he had no role in pre-licensure education at MTI, even though he is MTI's Education Director.

60.    Through its investigative effort, SRR has obtained some of the test preparation materials that are offered and sold by MTI to its customers seeking licensure as an MLO, who must take and pass the SAFE MLO Test.

DOCS-#5940188-v1

61.    MTI's SAFE MLO Test preparation materials sold to its customers contain "practice" SAFE MLO Test questions. Based upon SRR's analysis, at least twenty percent of the practice test questions being sold by MTI and obtained and reviewed by SRR are identical or substantially similar to real SAFE MLO Test questions.

62.    MTI's reproduction, distribution and sale of these test preparation materials infringes SRR's copyrights and misappropriates SRR's trade secrets. MTI did not obtain these test questions through legitimate means, and it does not have SRR's authority to reproduce or sell them. Upon information and belief, MTI improperly obtained some of SRR's highly confidential test content from Defendant Bartholomew. Also upon information and belief, MTI improperly obtained some confidential test content from former SAFE MLO test takers.

63.    Upon information and belief, Defendant Bartholomew's and Defendant MTI's scheme to harvest and sell SAFE MLO Test questions extends to Defendant Green, who operates a web site known as PasstheSafeExam.com.

64.    In 2013, Defendant Green created the PassTheSafeExam.com study course, at which time he offered approximately 500 practice SAFE MLO Test questions, all of which Green has stated he received from Defendant MTI.

65.    SRR obtained copies of some of the SAFE MLO Test preparation materials being sold by Green on his web site and compared them to real SAFE MLO Test questions. Based upon SRR's analysis, at least 65 practice test questions being offered for sale by PasstheSafeExam.com are identical or substantially similar to real SAFE MLO Test questions.

66.    Defendant Green's reproduction, distribution and sale of these test preparation materials infringes SRR's copyrights and misappropriates SRR's trade secrets. Green did not

17

obtain these test questions through legitimate means, and he does not have SRR's authority to reproduce and sell them.

67.     SRR's investigation of, and discussions with, Defendant Green have revealed that he claims to have obtained many of the practice questions he uses in his business, including the stolen SAFE MLO Test questions, from Defendant MTI.  According to Defendant Green, his web site is an affiliate of MTI.

68.     SRR has compared the stolen test questions being sold by Defendant MTI and Defendant Green to the SAFE MLO Test questions to which Defendant Bartholomew has been given access over the years.  Thus far, SRR can conclusively confirm that at least half of the infringing test questions being offered by Defendants were among those test questions reviewed by Defendant Bartholomew as part of his responsibilities on the SRR Test Maintenance Committee.

69.     Upon information and belief, additional stolen test questions viewed by Defendants Bartholomew and Green when they sat for the SAFE MLO Test were incorporated into Defendants' commercial study materials.

70.     Upon information and belief, Defendants MTI and Green have also improperly solicited from other past test takers their recollections of the questions and answer choices presented during their test administrations—in violation of those test takers' contractual confidentiality obligations to SRR.

### Continued Harm to SRR and the Public

71.     Upon information and belief, Defendant MTI and Defendant Bartholomew continue to disseminate stolen test questions.  Although Defendant Green has taken down his web site, nothing currently prevents him from resuming his test preparation business.

18

72.    This conduct causes irreparable harm to SRR and is against the public interest.

73.    Licensing jurisdictions, candidates, employers, and the public rely upon SRR and the SAFE MLO Test to ensure that MLOs meet a minimum standard of competency by passing the test, which is mandated by federal law.  It is therefore crucial that SRR preserve and protect the security and integrity of the SAFE MLO Test—not only to preserve the reputation of SRR and the SAFE MLO Test but also to protect public consumers from potentially unqualified MLOs.

74.    As a result of the theft and sale of test questions by Defendants, SAFE MLO Test items have been compromised, have been retired, and must be replaced.  The estimated cost of replacing these items is very high, but the potential damage to the integrity of the exam is even higher.

75.    Defendants' continued copying and distribution of SAFE MLO Test questions undoubtedly will continue to damage SRR's reputation and the credibility of the exam as an effective tool for ensuring the competence and qualification of MLOs.  This blatant infringement jeopardizes the integrity of SRR's efforts to securely develop and administer the SAFE MLO Test.

76.    The infringement at issue not only involves the open and obvious violation of SRR's copyrights and misappropriation of trade secrets but, more importantly, implicates significant issues of consumer protection.

## COUNT I

## <u>COPYRIGHT INFRINGEMENT</u>

### (As to all Defendants)

77.    SRR incorporates Paragraphs 1 through 76 above by reference.

19

78.    SRR's copyrights in the SAFE MLO Test questions are presently valid and subsisting, and have been valid and subsisting at all times herein affecting the matter complained of.

79.    SRR has never authorized Defendants to copy or reproduce, create derivative works based on, distribute unauthorized copies of and/or publicly display, the SAFE MLO Test questions.

80.    Upon information and belief, commencing on a date unknown and continuing to the present, Defendants have, without authority, willfully reproduced or had another reproduce for them unauthorized copies of, or created derivative works based on, SRR's SAFE MLO Test questions; and advertised, distributed, offered for sale, sold and/or publicly displayed such unauthorized copies throughout the United States, including in this District, in violation of § 106 of the Copyright Act of 1976, Title 17 of the United States Code.

81.    Upon information and belief, Defendants have willfully infringed for profit SRR's copyrights by copying or inducing another to copy SRR's SAFE MLO Test questions; selling and distributing said unauthorized copies; publicly displaying said unauthorized copies; creating derivative works based on SRR's SAFE MLO Test questions; and/or otherwise exploiting the infringing works, knowing that the infringing works are copied from, and substantially similar to, SRR's copyrighted SAFE MLO Test questions.

82.    Upon information and belief, Defendants had access to SRR's SAFE MLO Test questions prior to the time that Defendants created their infringing works.

83.    Upon information and belief, Defendants' acts were done with actual or constructive knowledge of SRR's copyrights, and constitute willful and malicious infringement of SRR's intellectual property.

20

84.    As a result of Defendants' activities alleged herein, SRR has suffered substantial damages and Defendants have wrongfully acquired substantial profits.

85.    Pursuant to 17 U.S.C. § 504, SRR is entitled to recover either statutory damages or its actual damages and Defendants' profits from their infringement of the SAFE MLO Test questions.

86.    Pursuant to 17 U.S.C. § 505, SRR is entitled to recover its costs and attorneys' fees resulting from Defendants' infringement of the SAFE MLO Test questions.

87.    Defendants are liable to SRR for all such damages, expenses and costs as SRR is entitled to recover.

88.    The foregoing acts of Defendants have caused SRR irreparable harm.  Unless enjoined, Defendants' acts as alleged herein will continue to cause SRR irreparable harm.

## COUNT II

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

### (As to Defendant Bartholomew)

89.    SRR incorporates Paragraphs 1 through 88 above by reference.

90.    In addition to his own acts of copyright infringement, or in the alternative, Defendant Bartholomew, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of another.

91.    SRR's copyrights are presently valid and subsisting, and have been valid and subsisting at all times herein affecting the matter complained thereof.

92. SRR has never authorized Defendants or any of their employees, representatives, or affiliates to copy or reproduce, create derivative works based on, distribute unauthorized copies of and/or publicly display the SAFE MLO Test questions.

93. The actions of Defendants MTI and Green constitute direct infringement by a primary party, and Defendant Bartholomew through his conduct materially contributed to that infringement with knowledge of Defendant MTI's and/or Defendant Green's involvement.

94. Specifically, commencing on a date unknown and continuing to the date of entry of any injunction issued by this court, Defendants, without authority, willfully reproduced or had another reproduce for them unauthorized copies of, or created derivative works based on, SRR's SAFE MLO Test questions; and advertised, distributed and/or publicly displayed such unauthorized copies in violation of § 106 of the Copyright Act of 1976, Title 17 of the United States Code.

95. Defendant MTI willfully infringed for profit SRR's copyrights by copying or inducing another to copy exam questions; distributing said unauthorized copies; publicly displaying said unauthorized copies; creating derivative works based on SRR's exam questions; and/or otherwise exploiting the infringing works, knowing that the infringing works are copied from, and substantially similar to, SRR's copyrighted exam questions.

96. Defendants had access to SRR's exam questions prior to the time they created their infringing works.

97. Upon information and belief, the infringing acts were done with actual or constructive knowledge of SRR's copyrights, and constitute willful and malicious infringement of SRR's intellectual property.

22

98.     As a result of the activities of Defendants MTI and Green, SRR suffered substantial damages and Defendants MTI and Defendant Green wrongfully acquired substantial profits.

99.     Defendant Bartholomew, with knowledge of the infringing activity, materially contributed to the direct infringement by Defendant MTI and Defendant Green by providing to Defendant MTI copyrighted SAFE MLO Test questions and answer choices, and material substantially similar thereto.

100.    Defendant MTI and Defendant Green distributed and sold this infringing material.

101.    By supplying information regarding the test questions, Defendant Bartholomew substantially assisted MTI and Green in their strategic and systematic efforts to disseminate material infringing SRR's copyrights.

102.    At all times Defendant Bartholomew was aware of Defendant MTI's infringing activity, or his actions were the result of reckless disregard for, or willful blindness to, SRR's copyrights.

103.    Before receiving access to any of the SAFE MLO Test content, Defendant Bartholomew expressly agreed that he would not share or distribute information concerning the SAFE MLO Test.

104.    As such, Defendant Bartholomew was actually aware that by sharing SRR's confidential, copyrighted information, he was infringing upon SRR's rights.  Alternatively, in light of the circumstances surrounding the above-mentioned Defendants' distribution of SAFE MLO Test content to Defendant MTI and Defendant Green, his actions demonstrate a reckless disregard for, or willful blindness to, SRR's rights.

DOCS-#5940188-v1

105.    Defendant Bartholomew is jointly and severally liable for the direct copyright infringement by Defendants Bartholomew and Green.

106.    Pursuant to 17 U.S.C. § 504, SRR is entitled to recover either statutory damages  or its actual damages and Defendant MTI's and Defendant Green's profits due to their contributory infringement.

107.    Pursuant to 17 U.S.C. § 505, SRR is entitled to recover its costs and attorneys' fees resulting from Defendant Bartholomew' contributory infringement of the SAFE MLO Test.

108.    Defendant Bartholomew is liable to SRR for all such damages, expenses and costs as SRR is entitled to recover.

## COUNT III

## COMMON LAW MISAPPROPRIATION OF TRADE SECRETS

### (As to all Defendants)

109.    SRR incorporates Paragraphs 1 through 108 above by reference.

110.    The SAFE MLO Test includes original compilations of questions containing financial, technical, ethical, legal and other information that is used to evaluate the competence of candidates for a license as an MLO, as required by federal and state law.

111.    SAFE MLO Test questions and information regarding the exam's content derive independent economic value, actual or potential, from not being generally known, and not being readily ascertainable by proper means.

112.    SRR exercises reasonable efforts under the circumstances to maintain the secrecy of the SAFE MLO Test exam, as detailed herein.

DOCS-#5940188-v1

113.    SAFE MLO Test questions and information regarding the exam's content therefore constitute SRR's trade secrets, as defined under common law, or other applicable law.

114.    Upon information and belief, Defendants, either directly or through the actions of another, willfully and maliciously misappropriated SRR's trade secrets in violation of law.

115.    By reason of Defendants' misappropriation, SRR has suffered monetary damage.

116.    As a direct and proximate result of Defendants' willful and malicious misappropriation of trade secrets, SRR has sustained and, if Defendants are not enjoined, will continue to sustain, substantial damages.

117.    Additionally, Defendants have been unjustly enriched as a result of their misappropriation of SRR's protected trade secrets.

118.    Because Defendants' acts of misappropriation were both willful and malicious, SRR is entitled to an award of punitive damages and attorneys' fees.

## COUNT IV

### FEDERAL MISAPPROPRIATION OF TRADE SECRETS: DEFEND TRADE SECRETS ACT, 18 U.S.C. Section 1831, *et seq.*

### (As to all Defendants)

119.    SRR incorporates Paragraphs 1 through 118 above by reference.

120.    The actions of Defendants, as set forth herein, constitute misappropriation under the Defend Trade Secrets Act, 18 U.S.C. §§ 1831, *et seq.*

121.    SRR possessed confidential information, including the SAFE MLO Test and the questions used on the SAFE MLO Test, which constitute trade secrets.

122.    Such information is used in connection with SRR's licensing examination.

123.    SRR took reasonable measures to maintain the secrecy and confidentiality of such information, including the measures set forth in herein.

124.    SRR's trade secrets cannot be properly acquired or duplicated because of the limited individuals who can access the information and the limitations imposed on those entrusted to edit and advise on the exam and on candidates who take the licensing exam, which incorporates those trade secrets.

125.    Defendants knowingly and improperly acquired SRR's trade secrets by improper means including, but not limited to, recording photos or videos of SAFE MLO Test questions.

126.    By virtue of his role as an SME on SRR's Test Maintenance Committee, Defendant Bartholomew was subject to a non-disclosure agreement and had a contractual duty to maintain the confidentiality of the confidential exam content shown to him, and not to use or transmit these trade secret materials.  Defendant MTI was subject to a written code of conduct that prohibited it from obtaining test content from third parties.  Defendants Bartholomew and Green were also contractually obligated to keep confidential the exam content provided to them when they sat for the SAFE MLO Test.

127.    Defendants knowingly and improperly disclosed and used SRR's trade secrets for personal gain by providing their customers with SAFE MLO Test questions and exam content, and this conduct continues to the present day.

128.    At the time of disclosure and use, Defendants knew that their knowledge of the trade secrets were derived from third parties who had a duty to maintain confidentiality.

129.    As such, Defendants used improper means to acquire knowledge of SRR's trade secrets, and, at the time of their disclosure and use, knew or had reason to know that the trade

26

secrets were derived from individuals who acquired them by improper means, acquired them subject to a duty to maintain secrecy or limit use, or derived from a person who owed such a duty.

130.    Defendants' conduct constitutes knowing, willful, and malicious misappropriation.

131.    As a direct and proximate cause of Defendants' wrongful conduct, SRR has been substantially and irreparably harmed in an amount not readily capable of determination.  Unless restrained by this Court, Defendants will cause further irreparable injury to SRR.

132.    SRR is entitled to injunctive relief enjoining Defendants and their agents and employees and all persons acting in concert or participation with them, from engaging in any further use of Defendants' proprietary and confidential information.

133.    As a result of Defendants' actions, SRR has suffered direct and consequential damages, and is entitled to recover attorneys' fees and compensatory damages, including enhanced damages in an amount to be proven at trial.

## COUNT V

## BREACH OF CONTRACT

### (As to All Defendants)

134.    SRR incorporates Paragraphs 1 through 133 above by reference.

135.    In order to obtain access to the SAFE MLO Test questions and to operate as course providers, Defendant Bartholomew entered into an agreement with SRR in connection with his role as an SME that included certain terms and conditions.

136.    Among other things, Defendant Bartholomew agreed to keep confidential the SAFE MLO Test content revealed to him during confidential exam content discussions and not to disclose confidential information to anyone not a party to the non-disclosure agreement.   He also agreed

27

to avoid any conflict of interest, *i.e.* any "actual, perceived, or potential benefit" that could bias his sound judgment.

137.    Defendant Bartholomew breached these obligations, by, among other things, surreptitiously recording the SAFE MLO Test content, providing it to MTI, and developing and/or teaching MTI courses that covered the same confidential material.  He further breached his obligations to SRR by misrepresenting his role at MTI.

138.    In order to obtain approval as a course provider, Defendant MTI agreed to refrain from viewing or acquiring SAFE MLO Test questions or communicating with anyone who has special knowledge regarding the content or "other non-public characteristics of the SAFE MLO Test."

139.    Defendant MTI breached these obligations by receiving confidential and stolen SAFE MLO Test content from Defendant Bartholomew and employing him as a course instructor. Additionally, MTI breached its contractual obligations to SRR by soliciting SAFE MLO Test content from former test takers.

140.    Defendants Bartholomew and Green also entered into an agreement with SRR at the time that they registered and sat for the SAFE MLO Test.  That agreement prohibited them from reproducing in any way exam content shown to them during their exam administrations.

141.    Defendants Bartholomew and Green breached these obligations by revealing confidential SAFE MLO Test content to third parties, including but not limited to Defendant MTI.

142.    SRR suffered damages as a result of these breaches.

28

## COUNT VI

## TORTIOUS INTERFERENCE WITH CONTRACT

### (As to Defendants MTI and Green)

143.    SRR incorporates Paragraphs 1 through 142 above by reference.

144.    SRR had and has an existing protectable right in its contractual relationships with all SMEs who assist in the development of the SAFE MLO Test, including Defendant Bartholomew's contractual obligation to keep confidential the SAFE MLO Test questions revealed to him during Test Maintenance Committee meetings and other exam content discussions.

145.    SRR likewise has an existing protectable right in its contractual relationships with its test takers, including but not limited to Defendants Bartholomew and Green, who entered into a confidentiality agreement restricting them from reproducing exam content in any way.

146.    Upon information and belief, Defendants MTI and Green had knowledge of these contractual relationships with SRR.

147.    Upon information and belief, Defendant MTI, either directly or through the actions of another, acted intentionally and without justification or excuse by causing Defendants Bartholomew and Green to breach their contractual obligations of confidentiality to SRR.

148.    Also upon information and belief, Defendants MTI and Green, either directly or through the actions of another, acted intentionally and without justification or excuse by causing other non-party test takers to breach their contractual obligations of confidentiality to SRR by providing confidential details regarding test content to MTI and Green.

149.    In tortiously interfering with SRR's contractual relationships, Defendants MTI and Green used improper means and/or had improper motive.

29

150.    As a direct and proximate result of this tortious interference, SRR has suffered damages.  Further, if Defendants MTI and Green are not enjoined, SRR will continue to sustain substantial damages.

151.    Because this conduct was malicious or accompanied by a wanton and willful disregard of persons who might foreseeably be harmed by their actions, SRR is further entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SRR prays for a judgment:

a.    That Defendants have violated and infringed SRR's rights in the SAFE MLO Test questions arising under the Copyright Act of 1976, as amended (17 U.S.C. § 101 et seq.);

b.    That the acts of Defendants constitute infringement and/or willful infringement pursuant to 17 U.S.C. § 504(c)(1)-(2);

c.    Alternatively, or in addition, that the acts of Defendant Bartholomew constitute contributory copyright infringement pursuant to 35 U.S.C. § 271;

d.    That the acts of Defendants constitute a misappropriation of SRR's trade secrets and a violation of common law and the Defend Trade Secrets Act, 18 U.S.C. §§ 1831, et seq.;

e.    That the acts of Defendants constitute breach of contract;

f.    That the acts of Defendant MTI and Defendant Green constitute tortious interference with contract;

g.    That Defendants be ordered to pay to SRR either statutory damages or its actual damages and any additional profits received by Defendants, in amounts to be determined at trial, for Defendants' infringement of SRR's copyrights under 17 U.S.C. §§ 504(a), (b) and (c);

h.     That Defendants be ordered to pay costs, including reasonable attorneys' fees and

expenses, pursuant to 17 U.S.C. § 505 and 18 U.S.C. § 1836(b)(3)(D);

i.     That Defendants, their agents, servants, employees, attorneys and all persons acting

in concert or participation with them who receive actual notice of the Court's order, be restrained

and permanently enjoined from:

(1)    reproducing, distributing, marketing, selling, transferring, or publicly displaying

       SRR's SAFE MLO Test questions;

(2)    creating, reproducing, distributing, marketing, selling, transferring, or publicly

       displaying derivative works based on SRR's SAFE MLO Test questions;

(3)    representing to any person or entity that Defendants have the right to reproduce,

       distribute, market, sell, transfer or publicly display any of SRR's SAFE MLO Test

       questions or any works derivative of SRR's SAFE MLO Test questions, unless

       such right is acquired lawfully from SRR;

(4)    representing to any person or entity that Defendants are the creators, authors, or

       otherwise originated any of SRR's SAFE MLO Test questions or any works

       derivative of SRR's SAFE MLO Test questions, unless such works are created

       pursuant to rights acquired lawfully from SRR;

(5)    destroying any documents in the form of point of sale, marketing, advertising or

       other information created in connection with the reproduction, distribution,

       marketing, sale, transfer, or public display of SRR's SAFE MLO Test questions,

       or works derivative of SRR's SAFE MLO Test questions;

31

(6)     soliciting, obtaining, reproducing, disclosing or otherwise using SRR's trade

secrets; and

(7)     attempting, causing, or assisting any of the above-described acts from which

Defendants and their agents are enjoined.

j.      That Defendants be required to pay to SRR compensatory damages in an amount
to be proven at trial;

k.      That Defendants be required to pay to SRR exemplary, punitive and/or treble
damages, in amounts determined appropriate by the Court or jury;

l.      That Defendants be required to pay to SRR pre-judgment interest on all amounts
awarded and post-judgment interest until paid, at a lawful rate;

m.      That Defendants are jointly and severally liable to SRR for all damages, additional
profits, other just compensation, expenses and costs, and interest to which SRR is entitled;

n.      That the Court retain jurisdiction of this action for the purpose of enabling SRR to
apply to the Court at any time for such further orders and interpretation or execution of any order
entered in this action; for the modification of any such order; for the enforcement or compliance
therewith; and for the punishment of any violations thereof; and

o.      That SRR have such other relief as the Court deems just and equitable.

*Signature page follows*

32

Date:  July 28, 2017

                                                    *Patrick G. Compton*
                                                    Patrick G. Compton
                                                    LINDQUIST & VENNUM LLP
                                                    600 17th Street, Suite 1800-S
                                                    Denver, Colorado 80202
                                                    pcompton@lindquist.com
                                                    Telephone No. + 1 303 454-0521

                                                    and

                                                    Jennifer Ancona Semko
                                                    BAKER & MCKENZIE LLP
                                                    815 Connecticut Ave., NW
                                                    Washington, D.C. 20006-4078
                                                    jennifer.semko@bakermckenzie.com
                                                    Telephone No. + 1 202 835-4250
                                                    Facsimile No. + 1 202 416-7055

DOCS-#5940188-v1